Thanks we have a set of consolidated appeals here. The basis that some of the defendants had joined in Mr. Whitehead's briefing thought it made sense to let counsel for Whitehead go first so Mr. Goldberger you have the floor. Thank you I've noted two minutes with the clerk if that's all right two minutes that's fine and I very much appreciate the court accommodating my personal schedule two months ago and rescheduling this argument very very kind of you. May it please the court my name is Peter Goldberger and it's my privilege this afternoon to represent Ronnell Whitehead one of the appellants. He was convicted after trial on a drug conspiracy count and sentenced for that and three substantive counts to which he had pleaded guilty on the eve of the at the opening of the trial. So four counts underlie the sentence. We have two issues briefed on the conduct of the trial one fundamental error issue in addition to that in the jury instructions that relate to the quantity attribution for classification. All the issues relate one way or another to the conspiracy issue that is the theme of the trial that is how the government stretched the notion of conspiracy to reach this collection of small-time drug dealers who in some respects competed with each other and in other respects say they they stretched it they had the leader of the conspiracy testify against all the others. That was a pretty good move by the government I guess. Not my idea of how to arrange the cooperation but I'm not a prosecutor. It doesn't usually work that way where you flip the topic. But that's how it worked here. Yeah. So what most of the a great deal of your briefing centers on your contention that agent Optograph if I'm saying the gentleman's name right. I think that's right. Was yeah across the line of 704 and I appreciate if you would get right to that. Okay well that's I think a good place to start in any event and I'm certainly well on invitation. So agent Optograph is the case agent and he's by the government as their expert. Now they could do that if they want to but it does create the practical problems that this court's cases talk about when we that refer to agents testifying as experts. At the end of the day Mr. Goldberg is it your contention that the references to group that agent Optograph referred to this collection as a group. Did that cross the line? That's my reading of your position. Yes the way that term was used it was a euphemism for the intent to agree element of a conspiracy charge. Well what collective noun wouldn't have been in your view? What synonym besides group would you have been comfortable with? I don't think they had any need to use a synonym or a euphemism at all. This was the jury question in the case. So the agent is inherently testifying one way or another however they whatever word they choose to avoid using the word conspiracy. So how would we write an opinion that says in effect you can never use a collective noun when you're speaking about the members of an alleged conspiracy because that in itself will say that there is a conspiracy and that's a violation of rule 704 which seems to be the argument you're making. If you are a fact witness say a label operator that's one thing but to express an opinion as an expert that puts the label on that's where the problem arises if it ventures into intent. But does group necessarily imply they had the mens rea to conspire to sell drugs as a collective? It implies the intent to agree on a common objective. It doesn't have to be drugs but in this instance that is what it means. Yes. The government in a footnote says this was indisputably a group but that essentially articulating I think in different words. Exactly what they said. Judge Restrepo was just noted. What is it about the word group in this context that makes you say I mean if I speak about a group of third circuit judges that certainly doesn't imply that they have a common agreement. Seldom do actually. I don't know about that. Why does it carry with it you think the mens rea of common intent? It's what makes an aggregation of individuals into a group is some common purpose. The group of judges may be meeting for lunch or they may be meeting to discuss cases or they may be having a party. But it doesn't mean that they intend a particular thing when they get together necessarily. I mean it's true we might have a maybe I should take it out of the court unless we've been accused of some conspiracy. But you can have groups get together for any number of reasons and it doesn't tell you they share a common objective or a common mindset or a common like you can have a group of people on a train. I guess you could say they're all conspiring to go to a destination where that train might stop but that doesn't necessarily mean they're going to the same place. Why is it that a group carries with it necessarily the implication of a common intent? So I wouldn't say it necessarily implies a conspiracy because that implies that the objective is criminal but the group implies a common objective of some sort otherwise this aggregation of individuals people who live in the same city in the same neighborhood are not a group unless someone is defining or seeking to have a decision maker like a jury define a common objective that they have and the one the government is arguing of course in this is the criminal objective. The testimony that people acted together necessarily mean always mean that it's testimony that they agreed to act together. Well first of all I'm not talking about any fact which is so opinion that they acted together. I think does imply a some level of intent to do so. And of course the jury might disagree, I'm sorry, the lawyer might argue to draw a different inference from the same facts but the government is making the concluteness having their expert draw the conclusion for the jury that there is a commonality of purpose. If the agent had, if the expert had said I've been at this for 30 years and in my experience when these actors work together at a conspiracy this is what it looks like. I have no idea what these guys intended subjectively but it looked like that what I just described. Would that be okay? I would not want to see the word conspiracy used because to draw the ultimate conclusion that it is a particular crime. But assuming some other word, I think that touches on the other problem with the fact that it was the case agent. So what this court's cases say is that the case agent. Let's stay away from that for a minute, just wrestle with it one at a time. All right. You were, is there something further that you wanted to say in response to what Judge? I think, I'm having trouble imagining a situation in which an expert who's held, a witness who's held out as an expert could express an opinion that this collection of persons was acting as a group. Not just mentioning it but making the point that they're acting as a group. That's the point of the testimony without implying something about their intent. And in this case the thing about their intent is the very thing about intent which is an element of the crime of conspiracy. In my hypothetical question, what if the witness said, I, I'm telling you I don't know what was in their minds. All I know is this is what it looked like and that's consistent with group activity based on my 30 years of experience. The right way to ask the question is for the lawyer to ask hypothetically if it were this fact, this fact and that fact, would it be consistent? So as soon as the agent, and this is the case agent problem if I may, says these are the facts of this case and I draw this inference, that's over the line of the case law. That's already over the line of the case law because it's not acting, responding to a question that's framed like a question to an expert. Imagine an antitrust conspiracy, a criminal prosecution for an antitrust conspiracy. And the expert who's brought in to explain this recondite area to a jury says, you have a group of widget producers and it can, this group, did the following things. This could be concerted action. There is such a thing as parallel action in a conspiracy like this. Here are things that a group like this might do that would lead you to conclude or could lead you to conclude that it was not just parallel action. You've identified a group. You've talked about what might be happening at the same time. And you've told the jury that there are markers for concerted action as opposed to coincidental independent action. Is that, is the fact that you've identified the group as a group something that takes that over the line? That troubles me and is the first thing that makes me ask, has it gone over the line? Rather than saying, you have a number of widget producers and they do this and they do that. And they do it at the same time. And that is consistent. That's the difference. It is, in the literal sense, a group. It's an industry group. It's a bunch of industry actors. In my hypothetical, they're all, you know, in this business of widgeting. But it's the word group that's really carries, to you, it is freighted with the meaning of common mens rea. Particularly in a case where the very question for the jury was, is this an aggregation of competing individuals? Or is this a group that has engaged in concerted action? Let me go back to a question Judge Jordan asked. What noun would be, if any, would be appropriate in the 704 context? I suggested a number of individuals. Which leads the jury to draw the conclusion. Or the group is properly treated as being a conclusion and not a description. The word is fine if it's asked about and presented as a conclusion. And it's presented in a way that doesn't violate rule 704. Let me take a step back and ask about the standard of review on this point. You, if I read your briefing right, you think that the burden is on the government here to prove any problem is harmless beyond a reasonable doubt that I'm, maybe I'm, what's the standard? I don't think I said it was a constitutional error, so I don't think I would have said beyond a reasonable doubt. But what's the, what's our standard of review? Harmless error. The burden on the government to show that you can say with confidence that the jury verdict was unaffected by the error. Because there was a, there was an objection that was close enough to what I'm saying to count as an objection to this point. Oh, I'm sorry. I've confused this with the shooting. That may be. So with this, with that standard of review in mind, when Judge McHugh ruled on it and said it was coming in, was there any later objection about any other thing that was said? Or was it an objection as to group and then? I'm not confusing it in the same way that you hinted we might, as I sometimes might, between argument in the first and second points. I believe it was preserved and not raised again. I don't think they later said, Judge, that crosses the line. I want to renew that objection. I don't think so. Okay. And when it was raised. My colleagues may correct me on that. Yeah. It was raised in the context of calling them a group. I believe so. Yes. Okay. It was going on there in time. If I could move on to. Please. Maybe in the interest of time, I will rest on my brief with respect to the 402 and 403 argument, unless you had questions in particular. The shooting. Well, let me do ask about that. Sure. The relevance objection that came. That came after the discussion about Mr. Whitehead being shot in the park. Right. I guess I'm trying to think if I read the record right. There was no objection when that was being talked about. The objection came up later. With respect to the Dorsey saying, yeah, the argument that this beef had nothing to do with the drug conspiracy. Am I wrong or am I right about that? The beef had nothing to do. Argument was about the shooting at Whitehead. The government definitely their argument was Dorsey's shooting at outsiders definitely had to do was was his way of protecting the territory from the competitors or police. I thought keeping the police out of there so they could continue making money. Yeah, so that we conceded that the government had an argument that made it relevant. So that's why this was strictly a 403 argument on the shooting by Dorsey as presented in our brief. But our argument about the shooting at Whitehead. We separated out as being literally irrelevant and and highly prejudicial. I'll go back and take a look at it. But would you agree if the if the argument that was that was raised is you can't prove this beef was over drugs. Was actually made with respect to Mr. Dorsey being shot in the leg. Mr. Whitehead was shot in the leg. I'm sorry Mr. Whitehead was shot in the leg. I mean if that if that's not the juncture where it's made made. I mean you can't you can't make an objection after the fact and reach back and get your earlier stuff can you? Well no. Didn't the defense use the shootings fairly aggressively in the cross-examination of cooperating witnesses? Once the judge ruled that he wasn't going to exclude it. The defense did what they were entitled to do. Which is to try to make the best of it. You don't waive your objection once the judge overrules it by using that evidence as best you can. Who put that in play first the government or the defense? The government. The government came up. I mean each shooting was the video was played three times. Three different witnesses testified about it was it was emphasized. It was in the government's opening and closing arguments. This was not treated as peripheral to the case. The government wanted the emotional impact of this evidence to bolster. Even though it had very little to do with what we started out talking about. Was this a group or were these individuals? Dorsey had an interest in keeping folks out of the neighborhood. To protect himself and his business of selling to small smaller sellers. Whether those smaller sellers were in an agreement you know in a conspiracy with each other or not. That's which is why that was relevant. Okay so if I could. Can you will you talk about uh please the um the argument that uh delivery and uh. Yes. Distribution are somehow different one broader than the other. Right so I'm skipping over the third argument here. Which was is about the framing of the of the quantity attribution in the jury instructions. Which we argued did not follow the subsequent authoritative decision. In this court and I will turn to the career offender issue which you're asking about of course. Yes so um. To be a career offender you have to have a triggering federal uh conviction. Which in this instance was thought to be. I have to be clear about this was thought to be. Whitehead's present conviction for conspiracy. But after Nassar actually you have to view it as being those distributions that he pleaded to. Would be triggering uh instant offenses because conspiracy doesn't count under Nassar. But in any event that you still the the question you're asking about is a question about the priors. So you have to have um in this instance. Two qualifying controlled substances offenses. As defined not in title 21 or not anywhere else. But as defined in the sentencing guidelines manual. The sentencing guidelines manual says. That you're a prior drug conviction counts as a prior. Controlled substance offense if it is for distribution. Or dispensing as as is relevant here. But there are in fact three kinds of delivery. Under federal or state drug law. Distribution dispensing and administering. So the sentencing commission has excluded. Administering from the definition of qualifying prior offenses. The so that's that's the premise of the argument the and then. When you look at the papers. That describe the prior offenses in Pennsylvania that my client had. And is true of a number of other people who have prior Pennsylvania offenses. You see a conviction for. Delivering without explanation. Without elaboration. Without explication of whether it is delivering. In the category of distributing or in the category of dispensing. Or in the category of administering yeah. So that that's that is how the Pennsylvania offense is categorically broader. Than the definition in the federal guideline and thus not cannot be used. Unless the file of the defendant's case shows that it was not administering. Have we ever said before look these are not a match. This is a categorical mismatch. Not on this argument. I don't believe you have said in dictum. That there is no categorical mismatch between the Pennsylvania and federals. Between the Pennsylvania statute and the guidelines in the glass case. But to the extent it that language covers what I'm saying it's purely dictum. And your position is that in any event. Glass was overruled by Nassir. I think I overstated that in my reply brief. I think glass is rests on like three different arguments. One of which is overruled by Nassir. So whether glass would stand stripped of the Nassir violative. Leg of the stool that it rests on. I can't say and happily for present purposes. I don't have to win. I don't have to argue. One headache per case if possible. Questions? All right. Should we leave it there? We'll have you on with us. Thank you very much. Thank you. Good afternoon, your honors. Julie McGrain, assistant federal public defender on behalf of defendant Donald Womack. I would respectfully request two minutes for rebuttal. Okay. Thank you. I joined Mr. Goldberger in points one and two of his brief. So the 704 argument and the jury instruction argument. And I will defer to him on the expert argument that he gave today. I think there's a little bit of overlap between the jury instruction argument. And the firearm enhancement argument that I'm making. Both of them stem from the idea of what is reasonably foreseeable to someone. Within the scope of their agreement. When it comes to a conspiracy. And in Williams, this court for purposes of the jury instruction made very clear. That we have to be more stringent than is something simply reasonably foreseeable. To the conspiracy as a whole. And we have to look at the individual defendant's participation. And the scope of their agreement. And your position is that Mr. Womack couldn't have expected or known. That guns were going to be used in connection with this conspiracy. No, it's clear that it was reasonably foreseeable to Mr. Womack. That guns were going to be used as part of this conspiracy. He talked with his nephew Dorsey about that in a recorded conversation. That someone testified about at the trial. What the judge did though. Was conflate the idea of reasonable foreseeability. And this sort of clearly improbable language. That guns and drugs are always connected. And made no findings about Mr. Womack's specific role. What was the scope of his agreement? And in the relevant conduct guideline. We have to look at what the scope of the defendant's. There has to be individual findings about what the scope of his agreement was. Mr. Womack didn't enter the conspiracy until nearly 15 months after it started. Well by the time he entered it. Was it not clearly foreseeable that he was going to be involved in a conspiracy. That was going to be using firearms to help enforce drug trafficking. That's the question that the court never made any findings on. The two findings that the court made in applying the enhancement. Were one. That it was reasonably foreseeable to Mr. Womack. That guns would be used. Because he has a history of selling drugs and using guns. And two. That the fact that he knew Womack. And he knew Womack to have used guns in the past. Was it was enough. He can't be responsible. I guess what I'm trying to ask him. Maybe inartfully is. Or would we be making Judge McKeown an offender for lack of a word. Isn't it fairly implicit in what he said. That he understood what was going on. And Mr. Womack understood what was going on in the course of this. And that he was saying. Look this is clear. You're a guy with experience. You know how drug traffic operates. You knew what was going on. And you came into this with your eyes open. That's not fairly inferable from anything Judge McKeown said. I think that his findings were too narrow. In light of the fact that 1B1.3 specifically tells us. That we have to look at what the scope of the defendant's agreement was. And there's testimony. That Mr. Womack wanted to get Dorsey off the street. And away from these guns. Because it was. His whole argument was. It's too dangerous. And it's too cost prohibitive. To be doing this kind of day-to-day sales. I want to get you some weight. To get you away from that. So is your argument at bottom. That the facts don't support the enhancement. Or that we need to remand it. For Judge McKeown to make a more robust record. So the facts as Judge McKeown found them. Don't support the enhancement. Because they lack the scope of the jointly undertaking criminal activity. Womack his role was limited. He came into the conspiracy late. His goal when he came into the conspiracy. Was to get his nephew off the streets. And still absolutely enter into a conspiracy. To provide weight. And provided that connection. So there I think that Judge McKeown did not make sufficient findings. And it should be remanded for the judge to. It's possible that on remand. The judge is going to find the same things. But Colato and 1B1.3 require this specific factual finding. As to the defendants. It's not enough to say that guns are always associated with drugs. That they're co-extensive. There had to be. And given Mr. Womack's limited role in the conspiracy. I would submit that the court's findings were insufficient. Thank you. Isenberg. Good afternoon, judges. My name is Martin Isenberg. And I represent Spencer Payne. Nice to see your judges this afternoon. Judges, I was the trial attorney for Spencer Payne during this entire trial. I was court appointed as a CJA attorney. During my representation of Mr. Payne. We had an opportunity to sit down with the government. After the second superseding indictment was issued. To proffer with the government. During that time of the proffer. Which lasted for quite a bit of time. Mr. Payne at that point admitted to various charges in this case. He admitted to it. Then he pled guilty to substantive charges. But forced the government to prove the conspiracy. Right, Mr. Isenberg? That is correct, Judge. But in the opening and in the closing. We indicated to the jury very clearly. That Mr. Payne was admitting to the substantive charges. In addition to that. Is that enough? Yeah. We're talking about acceptance of responsibility here. Is that where we're going with that? That is what we're talking about. And the denial of the acceptance of responsibility. At the time of sentencing. Under 3E1.1. So who's got the burden to demonstrate acceptance? The defense. Okay. Now having put the government to the proof. On part of the case. I mean, I read the colloquy. It looked like Judge McHugh said. Hey, you made some sensible concessions. That was good. Strategic move by you. I'm not faulting your lawyering far from it. I think it's a good idea. But it doesn't constitute acceptance of responsibility. What is wrong with that reasoning? Well, that's one of the factors, Judge. But there are other factors. And those factors are. Is that prior to trial. My client sat down with me and the government. And admitted to these charges. In addition to that. We were limited during the trial. Did he admit to the conspiracy? No, he did not. Okay. But he has the constitutional right, Judge. To have gone to trial on that. Sure. No question about that. And that shouldn't be held against him. Everybody's on the same page about that. The question is. Having chosen to stand on his rights. I mean, this is a. You can have a grand disagreement. About the balance that struck the policies. Behind the sentencing guidelines. And whether it's too big a hammer. To let the government, you know. Have this acceptance of responsibility. Benefit that it can give or withhold. But none of that's in front of us right now. The only question is. Having chosen to go to trial on. And put the government to its proof. On something that was not admitted. How can Mr. Payne complain that. I accepted responsibility. When clearly on the biggest charge of all. He didn't accept responsibility. I understand that. And that is one of the factors. And there's a totality of circumstances. That the court has to follow. And what I'm saying is. The totality of the circumstances. Should include what my client did pre-trial. And what I was limited to do. When we started the trial. Because of the admissions. That Mr. Payne had made prior to trial. And again. These were things that were told to the jury. Right from the beginning, Judge. And they were also told at the closing. Police found my client guilty of these charges. That's an acceptance. What's the standard of review for this? Is this a finding by the court? That there wasn't acceptance of responsibility? The court has given great deference in this issue. In the application notes. 3E1.1. The judge is given great deference. In making a decision. Regarding whether to give a defendant. The two-point reduction for acceptance of responsibility. And it does. The application notes do list. A certain amount of items. That the court should take into consideration. But it's not limited to those. They start with truthfully admitting. The conduct comprising the offenses. He didn't admit. To the conduct of conspiracy. He didn't admit to the conspiracy. That is correct. And he chose to go forward. With trial on that. That is correct. But he did admit to the substantive charges. And he did do it at a proffer. Shortly after the second superseding indictment. And we have the motion that was filed. To prevent me from asking various questions. Because he had made those admissions. And again. He chose to go forward on trial. And he has the absolute right to do so. And there are cases which said. That if someone goes forward with a trial. And then pleads guilty afterwards. They can get acceptance of responsibility. It is a factor that the court needs to take into consideration. It's the totality of circumstances argument. Okay. Where's the abuse though? Where is it? Well, I'm not sure. I'll go back to the argument. Mr. Greene had with Judge Restrepo. Perhaps the court could have been more robust. In making a finding on this issue. All right. Okay. Thank you judges. Ms. Luguzi. We've got you on video here. And query whether you had any argument. You wanted to present. I'd like to quickly piggyback off. Of what Mr. Eisenberg was just arguing about. In terms of the acceptance of responsibility. With regards to. Good afternoon. Excuse me. Karina Luguzi for Mr. Burton. With regards to Mr. Burton's issue number two. Which is the acceptance of responsibility argument. That Mr. Eisenberg was just making. In the government's response brief. The three main arguments. Or cases that they used. In order to counter Mr. Burton's argument. Was United States versus Lesnar. Felton and Boone. However, these cases are clearly distinguishable. From Mr. Burton's position. And possibly from Mr. Payne's position. Because in Lesnar and Felton. The only argument was for that. Third acceptance of responsibility point. Which is given for timely notification. Which is not an issue here. Also in Boone. Which was the 2002nd case. Before this circuit. It was. Mr. Boone had met with investigators. However, he had never. Explicitly admitted. That the package that he had. Had actually contained drugs. And that also is obviously. Remarkable in this case. Because both Burton and Payne. I believe everyone did admit. Ahead of time. That they were drug dealers. So that's not in dispute. The dispute was always. That they were individual. Yeah and having chosen. To put the government. To its proof on conspiracy. Again do you have. Can you point to anything. That would constitute. An abuse of the court's discretion. If that's the standard. Or a clearly erroneous finding. If that's the standard. In saying there isn't. An acceptance of responsibility here. I think we can go back. To you know the argument. Of the totality of circumstances. And that as has been. Affirmed by Williams. That indeed the judge. Did not give sufficient reasoning. For his totality. Of circumstances argument. It wasn't enough just to say. Well they went to trial. And so therefore. They don't get it. We didn't. He didn't say just. They went to trial. He said I understand. Why they admitted. What they did admit. And it wasn't. Because they were trying. To accept responsibility. It was. It was a strategic move. To limit their exposure. And that's fine. You can do that. But that's not the same thing. As accepting responsibility. Strategic behavior. Is not accepting responsibility. I reject your argument. In that regard. You put the government. To its proof. Therefore you lose. That's how I read. His reasoning. What's wrong with it. Because that's just. One argument. And that's just. One of the totalities. If you will. To take into account. Okay. Can I ask you a question. About your 404b argument. Yes. Why is 404b. In play here at all. Why. Isn't the evidence. With respect to shootings. Evidence. Intrinsic. To the charged. Conspiracy. And therefore. Just. Yeah. 404b is irrelevant. Well. Specifically. With regards to 404b. And my client. It is. Extremely important. For Mr Burton. Because. He was actually. Not involved. In the shootings. That were presented. Yeah. But. So. That's. I understand. I get. I understand. Your factual point. I'm trying to get you to. Deal with this legal question. I could. I could understand. If you said. Look. The government. Wanted to present. And did present. Evidence that. That Mr Burton. Was involved in this. Other conspiracy. He had another conspiracy. And a lot of the. The methods of operation. Were the same. So you should believe us. When we tell you. He was involved. In this conspiracy. That's sort of classic. 404b. But here. The shootings. Are presented. As proof of. A commonality. A mutual intent. As as evidence. Of this conspiracy. Why is it. That. Those are 404b. Pieces of evidence. And not just evidence. Of this conspiracy. Subject to 401. 402. And 403. But not 404b. Well I believe that. In the government's response. They had. Made the argument. That we had made. Much of the probative. Value. So it's not. So much. Of 404b. Argument. As it is. The 403 argument. That we had. Good enough. Established. That helps. Hopefully. Yep that helps. Thanks very much. Anything. The the only other. Argument that is. Specific to my client. Is the. His issue for. His. Not. He was not allowed. To have a mitigating. Role factor. I believe that the briefs. Speak for themselves. However I am happy to. Go through some of the. Government's case law. That I believe. Is not. Is completely. Not irrelevant. But completely. Distinguishable from. Mr Burton. They mentioned. Holmes. You know. Holmes was completely. Different. He had admitted to being a. Distributor for the conspiracy. So that's. Different than Mr Burton's case. And his involvement. Actually was one fifth. Of the conspiracy. He had admitted to. 10 out of the 50 kilograms. That the conspiracy had been found. Guilty of. In. San Diego. Defendants role in the transportation. Was not that of a mere mule. But it was integral. To the success of the organization. Again here. Mr Burton's. Small dealings. On the side. Sort of speak. Were not integral. Part of an organization. In Brown. The appellant had. Mr Brown had rented automobiles. And obtained cell phones. Both of these. Were integral parts. Of the organization. And were used to further. The goals of the conspiracy. In serene. They had basically used. Hadley as their main argument. And that you know. He had only argued. That he had taken. Orders from his father. But again. He had done other things. As a result. What his father told him to do. That were part of the organization. This is a. This is subject. To clear air of you right. This minimal role. Yeah. No I'm sorry. When I. That it's. That it's. Thank you. And. And the. The question then. Is. Help me with the. Where did the court. Plainly air here. Point me to the factual. Thing that you can. Say. Oh look. That just can't stand. The district court. Made a specific finding. That. His role might have been. Less than some of the other. Conspirators. But that he. His role could not be. Considered minimal. Within the meaning of the guidelines. Yes. As a matter of fact. I actually have four. The first is that. As was argued during sentencing. He was a lone wolf. He was not. Involved in the packaging. With other co-conspirators. Or as part of the organization. He only sold narcotics. From the one. The court rejected that right. The court. The court said. Right so. It's. I may not be doing a good job. This but. Telling me that. What the court rejected. Isn't helping me understand. Why the court. Could as a legal matter. Be said to have. Clearly aired. In rejecting your argument. What is it. In the record. That you can point to. That shows. Oh my gosh. Was he ever off the beam. When he said that. That district court judge. When. There's. Document. Documented. Relationships and. Dealings that. That Mr. Burton was having. With others. Charged in the conspiracy. And he was supplying. To people to sell. And he was helping people to sell. He was doing a bunch of stuff. That the district court. Looked at and said. Not a lone wolf. In the conspiracy. How. What can you point to. In the record. That shows. That's wrong. Clearly wrong. I don't know if it's one. Just one thing. That one can point to. In the record. That says that the judge. Was clearly wrong. Clearly. Our argument is. That. By rejecting. The four main arguments. That Mr. Burton. Presented in sentencing. The court was wrong. But specifically. With the fact that. Simply because. You have conversations. With other people. You point them. In a different direction. Does not. Lessen your entitlement. To a mitigating. Adjustment. Okay. All right. Thank you. Thank you. All right. Thank you for your argument. Mr. Zosmer. Your turn. Thank you. And I may please the court. Robert Zosmer. On behalf of the government. Good afternoon. The okay. So a lot of ground to cover. Unless the court wishes. Otherwise I'll go in order. With what's been presented today. First with regard to the expert. Testimony issue. I'll talk about this group thing. But taking just a step back. I think the law. Is very settled in this circuit. As to what is appropriate. Expert testimony. Regarding the conduct. Of a drug organization. And that is an expert. Cannot testify. As to the ultimate issue. Cannot say. I believe this person. Had the intent to distribute. We're all on the same page. Could you start off. With the standard of review. On this issue. The standard review. On this issue. Is abuse of discretion. This is a question. Of the admission of evidence. And it's settled. That the question. Is whether the district court. Abuse its discretion. Should this court find. That there was an abuse of discretion. Then we would reach. The harmless error question. As to whether. The error was harmless or not. But then finding an error. It's a deferential abuse. Of discretion standard. And so as I said. What is very clear here. Under settled law. Is that the expert. Is allowed to talk about. The characteristics. Of an organization. And even of course. The characteristics. That are seen in the evidence. And then express an opinion. As to whether those characteristics. Are quote consistent. With the final issue. Whether that be conspiracy. Or intent or anything else. Agent Updegraff's testimony. In this case. Followed that perfectly. When he talked about a group. He was not talking. About this group. He was being asked. Over and over again. What have you seen. In your investigation. Of groups. And what are the characteristics. That show. That a group. Is collectively engaged. In illegal activity. And he went through it. And he gave the characteristics. And I'll point the court. What really illustrates. How well this was done. Consistent with this court's guidance. Is the very last question. That was asked by the prosecutor. It's on page 2047. Of the Womack appendix. And the prosecutor. Was Ashley Lundenheimer. No longer with our office. And I wish she were. Because I would stop by. And commend her. For how perfectly. She followed the pattern here. Her last question was. And so all of these factors. Now we've gone through. From coded language. And firearms. And stashes of drugs. Overall. Do they help inform your opinion. About whether individuals. Are working collectively. Or separately. And he answered. Yes they have. And that was it. She stopped. And that's exactly. How this is done. You tell the jury. These are the characteristics. I look at. And then the jury knows. All right. This expert has seen this before. And now I'm going to apply it. To the evidence in this case. And decide whether these people. Were acting collectively. Did he ever say. That the members of the group. Acting in concert. He never did. And certainly using. The collective term group. Does not reach. The ultimate issue. In the case. As your honor was suggesting. And I'll adopt it. Groups get together all the time. The fact that. I might get together. With a group of friends. For lunch. Doesn't mean. That we have reached. An unlawful agreement. To violate federal law. And are acting with intent. Doesn't it doesn't mean. That at all. And he never. Said anything remotely. Close to that suggestion. Certainly never said. That he knew. The thinking of these. Defendants on trial. Which is what would violate. Watson. So there was no. Abuse of discretion here. That the judge. Carefully monitored. This permitted. What is appropriate. Under this court's precedent. And there was no error. With regard to the. The next question. Involving the shootings. The question was. Was asked as to. There was no objection. This is plain error review. And this court asked. This afternoon. When was the objection. First made. Well interestingly. The whatever objection. Was made and really. Wasn't even an objection. Wasn't made until. The defense itself. Had raised this. The first witness. In the trial. Was agent. Up the graph. And on direct examination. He didn't say anything. About shootings. It was on cross examination. And I believe it was. Burton's attorney. Who got into it. And started asking Dorsey. About shootings in the neighborhood. At the end of the day. The trial judge asked. All right well. Anybody have any problem. With any of this. And the question was raised. By Burton's attorney. And the answer given. By the prosecutor. We're introducing shootings. Because we're interested. In the reaction. We're interested. Before we get to that. I want you. I want to step back. Because I want you to respond. To something on page 21. Of I believe this is. Mr Whitehead's brief. A lot of briefs. He quotes from. Appendix 1781. The following quote. Decoded language over the phone call. It just gives an indication. That they are working in concert. To try to defeat detection. By law enforcement. And then on the next page. I think we've seen a lot. During the course of the trial. Of individuals standing. And watching too. They are working in concert. Watching for one another. As the other goes into the alleyways. To make a deal. Should that language. Make us go. Whoa stop. I don't think so. Your honor. Because. You look at the full context. Of his testimony. It starts about. Four or five pages. Before that. When they start talking. About the characteristics. Of groups. And it's very clear. That he is talking about. What he has observed. In other investigations. And when he mentions. That it is seen in this case. He's just tying it. To the evidence in this case. He is still not expressing. An opinion regarding. The ultimate issue in the case. Which is whether. These defendants intentionally. Agreed with each other. To commit a crime. Here's the heartburn. He says. We've seen it. During the course of this trial. Of the trial. Meaning that trial. Individuals stand watching. They are working in concert. Isn't that a statement. That you've seen. These people. And the evidence is. They were working in concert. Again. I think read in full context. He is. He is not. And really cannot. Talk about the intent. Of these individuals. He's not supposed to. That's what the argument is about. Oh. When I say cannot. I mean that. He doesn't know these people. He didn't talk to these people. He wasn't there. Dealing with them. A jury is not going to accept. And this court has said. The same thing in other cases. The jury is not going to. He's the case agent. That's another. That's speaking of beef. That's another beef. We've got it from the other side here. They're they're saying. They they put the fact guy up. And he tells about the investigation. And then he says. And I'm an expert on dialogue. Now I'm going to tell you what it means. What I just told you about. I'm going to tell you what it means. But as this court has said. In other in other cases. A jury is not going to assume. That even a case agent. Who does not personally know these people. Can answer the question. As to what's going on in their minds. He can talk about what he saw. And he can talk about. Whether it's consistent. With what he has seen elsewhere. What's the content. When you say. He's got to be right in context. Help me with the context. That makes it okay. For the case agent. To say. In this trial. These individuals. We've seen. Working in concert. The context is. That the full testimony. Is clearly about. What he is. The characteristics. He's observed. In other investigations. And then the last thing. I'll say on that your honor. Well it won't be the last thing. If you have more questions. But what I'll say about. Also this is where. We might get to harmless error. If the court is really concerned. About that one line. In his full testimony. Which was clearly focused. On what he has seen elsewhere. In the middle of a 19 day trial. In which there's. An avalanche of evidence. Regarding the efforts. Of these defendants. Then I would say yes. If there was an error. For that one line. That it was certainly harmless. The. Now if I may. Just to wrap up. Regarding the shootings. The relevance of the shootings. Was that. The. They. Armed themselves. In order to respond. And they collectively. Armed themselves. In order to protect. The neighborhood. Because shootings. Are bad for business. The district court. Explicitly told the jury. That. This was a separate beef. It has nothing to do. With the drug dealing. It's not why you're hearing this. Nobody else. Nobody's. You know. Holding these people. Responsible for shooting. It's for arming themselves. And there was no. Plain error here. In admitting that. Your honor. Asked a question. Of my friend. Mr. Luguzzi. About. 404 B. I believe in her brief. In. In Burton's brief. On page 21. It's about. That this is not a 404 B. Issue. So we're all on the same page. This is not 404 B. This is relevant evidence. To prove the conspiracy. And to prove that the collective. Actions of these people. Turning next to. The question. Regarding the firearm. Enhancement. I want to save the best for last. Involving the. The administering issue. And the controlled substance offense. The firearm enhancement. The argument that was presented. By Mr. McGrane today. I think it's different. From what's in her brief. Her reply brief. On page five. Says the argument is that. The use of firearms. Was not reasonably foreseeable. To Mr. Womack. And today. She stood up and said. Yes it was. Because there were conversations. And we pointed out in our brief. Where he's right there. Where they're talking about. Arming themselves. Her argument today. Is it's outside the scope. Of his agreement. That isn't the argument. That was presented in the briefs. It's not accurate. Womack was involved as a. In setting up the supply. He got a cut. From many of the transactions. For at least a year. He was Dorsey's close cousin. They talked about everything. Certainly. It was within the scope of his agreement. In furthering this drug trafficking organization. That people were arming themselves. In order to protect the organization. The acceptance of responsibility. And minimal role. I don't have much to say about. These are reviewed for clear error. The district court is clearly acting appropriately. When someone doesn't plead guilty. And goes to trial on the main issue. They did plead guilty. To lesser distribution offenses. Which would have resulted in sentences. That are a fraction. Of what they were responsible for. Under the conspiracy charges. And the minimal role as well. There was no clear error on that. I'd like to focus on the administering issue. This question of whether. Pennsylvania drug trafficking. Is broader than. A controlled substance offense. Under the career offender guideline. I do believe this is argument. With all respect. It's rather frivolous. But it's also very significant. Because it's being raised. In case after case. Week after week. In our district courts. In this circuit. And I don't often do this. In fact I do this very rarely. But I'd like to respectfully ask. That the court consider. A precedential opinion on this issue. Because district courts. Are being presented with it. Every single week. In this courthouse. And in the other courthouses. In the circuit. It is the flavor of the month. What's your pitch? Why is Mr. Goldberger's position. So the pitch is. And I also just want to say briefly. There are two flavors of the month. The other flavor. Is saying that. The Pennsylvania drug trafficking statute. Not only reaches administering. Which makes it too broad. But also reaches attempted transfer. That makes it too broad. That was not briefed by the defense here. Until Mr. Goldberger's reply brief. It has been extensively briefed. In other cases in this circuit. And there was an oral argument last month. In the Dorian Dawson case. Before judges Greenaway. Sirica and Rendell. So I think they're on top of that. And that's something. On which we would very much appreciate. A resolution as well. Because that's the other current assault. Getting to the administering question. I'll talk about the attempt. If the court's interested. But what's before this court. Is administering. And it's a pretty simple issue. The controlled substance offense. Definition in the guideline. Includes delivery. It's an offense involved. Manufacturing delivery. Possession with intent. But delivery is the key word. For our purposes. The Pennsylvania statute. This is section 780. 113 830. Oh wait. I'm corrected. The guideline refers to distribution. Or dispensing. The Pennsylvania statute. Refers to delivery. And then it defines delivery. As the actual constructive. Or attempted transfer. From one person to another. Of a controlled substance. Other drug device or cosmetic. Where there's not an agency relationship. That is distribution. The. And no court has ever held otherwise. These statutes are a match. What's very interesting. Is that that definition. Of delivery. As part of distribution. Which is in the state statute. As we lay out in our brief. Is identical word for word. To the federal definition. Of distribution and delivery. And so what it means. Is that if this argument. Were to prevail today. That somehow the main. Pennsylvania drug trafficking statute. Is not a controlled substance offense. For this reason. Then neither is federal drug distribution. Under section 841. Which would be quite astounding. That the sentencing commission. Passed a career offender guideline. At the direction of congress. And left out. The federal drug trafficking statute. So the suggestion that's being made here. Is that somehow. The Pennsylvania statute. Is over broad. Because it also reaches. Quote administering. And administering. Has another definition. Under state law. Administering. Is the direct application. Of a controlled substance. To the body of a patient. Or a research subject. That's not referenced at all. In the Pennsylvania drug trafficking statute. That we're dealing with. Section 780 1113 830. It doesn't. It mentions delivery. It doesn't mention administering. And in fact. In 780 113. Which is the broad. Pennsylvania drug statute. That has numerous subsections. There are about three. Of the 36 or so. Subsections. That do mention administering. That's why the definition is there. So this statute. Is it. It's used in other. Statutes right. The administering. It is. In those sections. Is it. Do they shed any light. On the purpose of that word. Well they do. Because those three. Set there. We're still in 780 113 a. And it's 13 14. And 35. That are the ones. That refer to administering. Not 30. Which is the. The main drug trafficking statute. 13 14. And 35. Are all about practitioners. They're all about. Carve outs. And rules. Regarding what. Licensed practitioners can do. Because that's what administering. Is about. It's about. Safe harbors. Doctors. Exactly. And it's because. They are administering drugs. To the body of a patient. Or a research subject. So that you know. This all fits. The. And so. I really don't know. Where this argument came from. That somehow. The Pennsylvania drug statute. Subsection 30. Which is the main one. That people. Criminals are charged with. Where this argument came from. That this reaches administering. To the body of a. Research of your patient. On the plain language. Of the statute. It's not there. And then so. The final place. That this takes us. Is what's called. The reasonable. Probability standard. That the Supreme Court has set. So we're stuck. With this categorical approach. And the Supreme Court says. That if you want to come up. With some hypothetical. Of what is categorically. Outside a statute. There has to be a reasonable. Probability. That the state would apply. The statute. In the creative way. That you're suggesting. We have. Has our circuit. Shut that door. No. Nor could it. Because it's a direction. From the Supreme Court. This court has narrowed. Has shut the door. A little bit. What this court. Has said. In cases like. South Warren. And some others. Is that. Where the language. Of the statute. Is explicit. Where it's clear. That there's a categorical. Overbreath. Right. Then there's no. There's no. Basis for going. To reasonable. Probability. Right. And you don't go. And reasonable. Probability. Takes you on an expedition. Looking for other cases. And you don't have to do that. If the statutory language. Is clear. As I've made very. Clear here. I hope. The statutory. Language here. Does not support. At all. The suggestion that. Subsection 30. Reaches administering. There's nothing. On the face of the statute. That makes it overbroad. And with respect to delivery. That's true. We would never. We wouldn't have any occasion. To think about reasonable. Probability. Right. Unless I've misunderstood. What you've just said. You've made the argument. That there's no. Rational way. To read the statute. The way. Mr. Goldberger is asserting. That administering. Has a specific meaning. It's explicated. In subsections. A13. A14. A35. Of 780-113. And so. You don't have. To be confused. And nobody else. Should be confused. And if that's true. Then. We would never be. Asking the question. Under our. Precedent. About reasonable. Probability would be. Well I think we would. To be fair to defendants. I think there may be. Situations in which you would. So if you had a statute. Where you're looking at. The plain language. All day long. And it doesn't look. Like there's over breath. But there is a state. Decision out there. Say of the state. Supreme court. In which the court. Did extend the statute. To a situation. That it doesn't appear. On the face of the statute. That it would. That's where a defendant. Could satisfy. The reasonable. Probability argument. Is that. A situation here. No because. There is no case. And so what Mr. Goldberger. My good friend says. In his reply brief. Is that. Well maybe it's happened. Somewhere. Maybe somebody. Has been prosecuted. Under 830. For delivering. A drug. To the body. Of a research subject. I'm just trying. To figure out. Why you want us. To get it. Oh. Probability. I'm not saying. I do your honor. I'm saying. It's the last step. It's the last nail. That I think I'm required. To talk about. But I think that. Clearly on the face. Of these statutes. Themselves are very clear. It's very clear. That administering. Is talking about the work. Of a practitioner. That's addressed. In other statutes. And that. If somebody. Who is not a practitioner. Who's not acting. Under any license. Delivers drugs. To anybody. They're not just guilty. Of a state crime. But they also. Fall squarely within. The controlled substance. Offense definition. If I just be clear. So in your. Hypothetical. Presidential opinion. You don't think. We need to get. To reasonable probability. I don't. I don't. I think. There's a very clear answer. But I do think. You need to cover the field. And when. You know my. Very respected colleague. Says in his reply. Brief that. Well maybe. There'll be a case. One day like this. I have to say. That that doesn't cut it. Under the guidance. Of the Supreme Court. Which we're required. To follow. So I think. I've covered the issues. Unless the court. Has further questions. Thank you very much. All right. Thank you very much. We'll go ahead. And have rebuttal. Mr. Goldberg. You want me to go first. Because it'll be quick. Or do you want him. To go first. Let's just go. In the right. In the order. We took him in. To start with. First. On the harmless. Error question. With respect to. The 704b argument. The government. Did not argue. Harmless error. At any point. In their brief. That point is waived. For the appellee. Well we would. We would have. Wait. Can they waive that. Yes. Don't we have an obligation. If we thought. There was error. Then to say. Okay. What. What's the impact. Of that error. And. And apply the standard. That applies. And you. You pointed out. Accurately. It's harmless error. Now. Can you waive. The standard of review. I think I'm going to agree. With my friend. Harmless error. Is not the standard of review. Standard of view. Is abuse of discretion. The government gets. Can try to win. An appeal. Notwithstanding. Having reversible error. If it can show. Harmless error. It has a duty. To go forward. And that's still. You could say. Yeah. I don't. It's not the way. I frame it. But I'm not going. To argue with you. About that. I mean. It's framed that way. Sometimes. All right. The. I think. The weakest. Possible argument. On the. On the. Expert is. The one that. Mr. Zosmer. Liked so much. Which is the last question. That was asked. Was not improper. It doesn't tell us. That there weren't. Plenty of improper. Questions asked. And improper. Answers given. Which I highlighted. In my brief. And your honor.  The case agent. Can be used. As an expert. If the case agent. Is carefully. Asked a hypothetical. Question. Which can be. Based on the real. Fact. And the. Real facts. And the. Facts of the case. But not. As here. Where the expert. Case. The case agent. Used as an expert. Is asked. To volunteer. From his own knowledge. Of the investigation. Of the case. What the facts are. And then. Expressing the opinion. Which goes to. To mental state. Which is the. The intent to agree. Which is implicit. In the way the government. Use the word group. In this case. So. Can I take another. Second on the. Administration. Question. You know what. We'll give you. Give you another minute there. We've had a lot of argument. That's an important point. So go ahead. Yeah. I'm sorry. We've used a lot of time. A non practitioner. Can be guilty under a three. Of administering. If the person to whom. The drug is administered. In Pennsylvania law. If the person to whom. The drug is administered. Is a patient. And I think we can. You can readily. Imagine. Such cases. Readily. If you needed to. Imagine them. This happens. In mercy. Killing situations. In hospices. In families. Where the drug. Is administered. To a helpless person. And if that drug. Is a you know. It's a sad story. But it's not a fanciful. Or outlandish story. By any means. We read about such stories. All the time. They may not. Often be prosecuted. When they're prosecuted. They are. Dealt with appropriately. By ARD. In Pennsylvania. Or probation cases. But they are real cases. They're not dealt with. Are they. As drug trafficking cases. They could be prosecuted. Under this statute. It's plain language. It's just not true. To have this argument. Called frivolous. Is just wrong. It's the plain language. Of this statute. Plainly covers it. So I got. I have. I've got two sides. Telling me how plain. This is. In opposite directions. Yeah. But I got you. We have your argument. Okay. Thank you very much. I know I'm. You know. You know the case. But better than. Either of us. About the. Realistic probability. That that's the law. Of this circuit. Yeah we're. We're with you. We understand. Thank you. Ms. McGrain. I just wanted to quickly. Address Mr. Zosmer's argument. That I did not raise this issue. About reasonable foreseeability. The court's reasonable. Foreseeability test said. That it will always be. Reasonably foreseeable. If you have familiarity. With guns and drugs. So yes. On page 28 of my brief. I made the point. Whether an individual defendant. Can reasonably foresee. Acts of his co-conspirators. Depends upon the degree. Of the defendant's involvement. In the conspiracy. Citing collateral. The defendant can have a substantial. Role in a conspiracy. But if it's not one. That is individually related. To the drug. To the guns. Then it cannot be. Reasonably foreseeable. You have to look both at. Is it something the defendant. Knew or should have known. And also. Was it within the scope. Of his agreement. So I raised that on page 28. On page 32. And finally on page 9. Of my reply brief. Where I say. The court. And the government. Rely upon generalizations. About the ubiquitous nature. Of guns and drugs. That's an insufficient basis. To support the enhancement. Thank you. All right. We thank counsel for. A thoroughly briefed. And well argued case. We've got it under advisement. We'll recess court.